and Mr. L. Wood, representing Kellogg Brown & Root, we'll hear from you first. Thank you, Your Honor, and may it please the Court. The district court here found KBR liable for enhanced Anti-Kickback Act damages for knowingly receiving kickbacks from its subcontractor, Eagle, because two low-level employees received about $5,000 in business entertainment over a little more than a year. And it did that even though KBR supervisors weren't aware that this was going on and even though both of the employees in question had received annual refresher training every year in KBR's zero-tolerance, no-gifts policy. This outcome shows the breadth of the government's interpretation of the AKA, which leaves the government lawyers to draw the line between business entertainment and kickbacks to subject companies and individuals to civil penalties and criminal prosecution. Fortunately, Congress has built two limiting principles into the text of the Anti-Kickback Act, which prevent this kind of overreaching. And either one of those, I think, would be enough to warrant reversal here. First, in order to avoid collapsing the distinction between the strict liability provision of the AKA and the separate provision requiring proof of corporate knowledge, courts cannot infer or impute knowledge based on the acts of low-level employees simply based on their apparent authority. And secondly, consistent with the Sundiamond case from the Supreme Court and also to prevent penalizing ordinary business conduct. Would you stop there before you get to Sundiamond? And what's your basis for what the Congress has done to prevent use of apparent authority? I thought I understood you to say that you cannot rely on apparent authority to prove the corporation knowingly received this kickback. Because if all you're looking for is apparent authority, it would collapse the distinction between the strict liability. Well, I understand that. But you said that Congress had enacted something to protect against that. Well, because they put in a separate provision requiring proof of knowledge and because they use the word specifically employee, and even the government hasn't come up with any explanation for why that word employee in the strict liability provision does any work except for their statement that, well, that would be for situations where the person didn't have apparent authority. And I think that's kind of a case that's kind of a unicorn in that you're never going to give, as Judge Jolly said in his opinion in the first appeal, you're not going to give a kickback to somebody who doesn't have apparent authority, who can't do anything to help you. And, in fact, I would question whether that would even be a kickback. What is the error of the district court here? The district court here applied the authority responsibility test, and you want to expand it to the what's the name of the case? The Hellenic factors. The Hellenic factors. Well, she purported to.  Well, what is her error? Specifically, what is the error? Well, I think that, at a minimum, you said at the tail end of your opinion that what she should consider on remand was their job titles, their actual responsibilities, and their overall place in the company. And, at a minimum, she did not consider the overall place in the company. Because, as the government's own witness said, Robert Bennett was rather low on the totem pole, and his son James had even less authority. So you're saying that you accept the test of authority responsibility, but she misapplied it? She misapplied it. Yes, that's correct. Because what she looked to really was not their overall position in the company, and was much more like an apparent authority test, where she was looking at what Smoot and Kessner believed these people could do for them. Because she didn't consider the fact that, for example, that Robert was just one of many low-level traffic managers, and that James was one of even more low-level subcontract administrators. But she did know that. She may not have specified it, but she did know that. Well, she knew that, but she was not a basis for her opinion. And, you know, she has to basically defend her in explaining her basis for saying that you can acknowledge this. Okay, but if she had considered these additional factors, you're saying that she would have concluded that there was no authority or responsibility sufficient to hold them liable. Is that what you're saying? That's what I'm saying, yes. That Robert was a low-level administrator or a low-level supervisor who literally could not enter contracts for KBR. His son James could enter contracts, but not on log cap, the one contract that Eagle was doing work on, and only up to a total value of $250,000. Okay, if she misapplied it, how should she have applied it? What would have been her analysis, from your point of view, that would have passed legal muster? Well, as you said in your opinion, she should have considered their overall place in the company. There was too much focus on what Smoot and Kestner would believe them capable of doing for them, and not enough on whether it makes sense that these people are high enough up the chain to attribute, you know, this separate level of enhanced authority to them. Well, one thing Congress, it seems to me, would have to consider in this, as large as KBR, with as many levels of authority as there may be, what are we trying to prevent? We're obviously trying to prevent the kickbacks. When you make the company liable, you also have to factor in there are ways for the company to protect themselves that may not be consistent with the policy behind the Anti-Kickback Act, which is to push decision-making pretty far down the hierarchy. It seems to me that it's least relevant what Judge Crone looked at, which is the apparent authority of these individuals actually to help them on what they were trying to get, to get perhaps the problems with the subcontract that existed and get those to be overlooked on the continuation of the sub or the renewal of the subcontract. So I'm not saying that apparent authority is the right test, but we do need something that is likely to hold the company accountable, that it can't avoid just by pushing decision-making authority far enough down the hierarchy where we can always say we were oblivious to what was happening. Well, in any event, I think the policy concerns like that are fundamentally for Congress. And fundamentally, we need to interpret how Congress did that here without giving us any language beyond knowing. Well, here's why I think that the Limited Liability Act presents such a good analogy. Because it's a body of law that this Court has developed that addresses a situation that is really just like we have here. It's a two-tier statute that creates one level of liability based on strict liability for the employee's performance and an enhanced level of liability if there's corporate knowledge. And it is exactly the type of situation we have here. And I think it makes sense when you're trying to decide how to interpret this two-tier statutory scheme, that there's no reason to invent the wheel. And even if the Court doesn't adopt all of the Hellenic factors, I think it makes sense to adopt the basic insight of that line of cases, which is that when you have that two-tiered liability scheme, you have to have, in order to oppose that additional enhanced level, you should have some indication that they really stand for the company. That person represents the company for that. And in the Hellenic type of cases, you require proof of an ability to make basic business decisions. You know, hire and fire people, enter into contracts, set prices, things of that sort. And there's really no question that these individuals did not have that. As I say, James did not even have supervisory authority. But somebody thought they did, or as you made reference to the remark in the concurrent opinion, that people are not going to pay somebody money if they can't do something for them. So they obviously thought that these individuals whom they bought drinks for and all that kind of thing could help them out in some way. But that has not been in the Hellenic line of cases. They haven't applied a parent authority. And I don't think it makes sense to use that for this additional layer of liability, because you would never have to use the strict liability provision if all it took was a parent authority. Every case you had where somebody was given a gratuity, presumably that person would have been given the gratuity because you would think they would help them. Because otherwise it wouldn't even be a kickback, I don't think, under the text of the statute, because it has to be given to improperly obtain or influence a decision. And you would never give money to somebody if they couldn't improperly obtain and influence the decision, or rather it wouldn't be a kickback. Somebody on a loading deck, I mean just a regular hand that could load your truck light or load it heavy or something like that. Exactly, but that would be, as you indicated in your opinion, and as the government indicated in the first argument of this case, it would be irrational for anyone ever to give basically money that was intended as a kickback to somebody who couldn't help them. So it would literally do no good at all. It would do no work. And it's a basic axiom of statutory construction that you cannot have an interpretation that renders words superfluous. And the only use that the government has come up for that word employee in the strict liability provision is for these cases where they don't have a parent authority, and that is a unicorn. You don't give kickbacks to people who don't have a parent authority. I'm sorry. Well, no, I was just going to say, and you have indicated that the efforts that you make to try to address this problem are sessions with people in the level of the ones that took the kickbacks here not to take kickbacks. You mean what KBR can do to prevent that? Well, yes, I know you said that they went through some kind of training, instructions, and so on. Well, the type of kickbacks that were at issue here are particularly hard because it's not like they came to work with new BMWs wearing a gold Rolex. They were carrying the supposed kickback in their stomachs when they returned to work, and it's very hard to do that, to police that, unless you literally are like, show us your meal receipts for the last week. So I think it's hard to fault KBR too much on this particular type of kickback. But, I mean, they had a policy, a zero-tolerance policy, and they found out the kickback supposedly happened from March of 2003 to June of 2004, and the complaint was filed on January of 2004. So, I mean, it's not like- What kind of instructions did these particular people have with respect to any kickback policy and discouragement on the part of Brown and Root? I'm not familiar with the actual education program, but I do know that there was a written policy and that they received annual training, and I have a copy of that policy here, which I could hand up. Who received annual training? Both of the employees here and everyone in the government services section of KBR, which was one of 13 units of KBR. Counsel, there's certainly other issues in this case. I wish you would turn to the favorable treatments on Diamond McDonnell bribery statutes. Where are we on-? What can you tell us about that to convince us? Well, I think the point is that in order to draw a distinction, the standard that the district court applied, the standard that the government is asking to apply, the problem with it is that if you don't tie it to particular conduct, it looks too much like what the point is of ordinary business entertainment, which is to develop goodwill. When you have broken bread with someone, they know you better. They're more likely to understand you. They're more likely to trust you. And all of those are legitimate reasons why they should be more likely to give you business. But when you say, does that mean they're more likely to give you business? Does that mean you're more likely to overlook performance problems? There are legitimate reasons for that. But when you take it, unless you tie it to particular acts, it looks an awful lot like you can punish ordinary business conduct. It looks a lot like one thing that the court also overruled in Sundiamond, the Supreme Court overlooked in Sundiamond, at page 404 of the opinion. They overruled this idea that it was enough to find, quote, intent to reward past favorable acts or to make future ones more likely. And when you have this kind of goodwill, when you have a good relationship with your client or when you have a good relationship with the people, they're more likely to give it to you, but that's for a legitimate reason. And one reason why you have to look to particular acts is to avoid essentially penalizing ordinary business conduct. I think it also follows from the language of the statute and from the legislative history, which shows there are really peculiar results if you say that it's enough to just generally increase the chance that somebody is going to get a subcontract at some point in the future. Counsel, one of the things that concerns me about applying Sundiamond or McDonald is those seem to be more significant limitations on conduct, official bribery of public officials and the Sundiamond case itself and McDonald. We're dealing with something else. And to apply the same test seems to me to be too demanding of the Anticipate Act. If you could give me something that's somewhat intermediate that would be a lesser standard than a specific action, official act, it would seem to make more sense to me. I think that that's a reason why it should be read the same way, because otherwise you have the peculiar situation where a kickback behavior or a gratuity between a subcontractor and a contractor can be criminalized, but one rung up, the very same conduct would not between the contractor and a government official, even though the government official is being compromised. And I would think, if anything, it's more serious when you're compromising a government official than somebody who's just a government contractor. I think that's a reason to apply the Sundiamond test. If we disagree, or at least I disagree, is there any intermediate standard that you could think of, that you have thought of? I'm not trying to get you to wing it from the podium there. I have not thought of one, but I think that the important thing is that the government hasn't pointed to one. The court below hasn't pointed to one. And I don't know exactly what it would be if you don't tie it to a particular act. I don't know what it is that would prevent essentially sweeping and goodwill, because after all, you know, if you have goodwill, it does make it more likely that you're going to get subcontracts. It makes it more likely to work out. How about addressing the statute of limitations issue? Oh, may I answer? I only have three seconds. Oh, sure, sure. Give each side two more minutes. Okay. On the statute of limitations issue, we presented two arguments out of 3731, which is, after all, a False Claims Act provision entitled False Claims Procedure. And I think that for two independent reasons within that, there is reason to believe that this is untimely. The government makes no bones about the fact that they knew about this in January of 2004. They didn't file their complaint and intervention until August of 2010, more than six years later. And it's only timely if it comes back within that relation of that provision. Now, the first clause, there's two arguments. Both the idea that the government did not intervene and pursue this, and they stopped pursuing it when they dismissed the False Claims Act procedure. It's a naked AKA claim. That's all that's going on. But they did initially pursue both false claims and AKA. That's correct. But our argument is that it's a present tense. The 3731C speaks in the present tense. They intervene and pursue, and they're not pursuing it now. And we argue that for this, you know, it's a very remarkable thing. It allows sealing. It eliminates the ordinary principle that a defendant have notice of the charges against him so they can start getting his act together, start getting his case together. And this is an exception to that. And, you know, it acts in derogation of the statute of limitations. How about addressing this distinction you draw between claim and cause of action? Cause of action is such an archaic term, but it's in the statute. Well, it's a sign that I'm archaic because it's a very familiar one to me. But the first occurrence of the term claim in the statute, there's no dispute that that has to refer to a False Claims Act claim.  And it's an ordinary principle of statutory construction that every time a word appears thereafter in a statute, it has the same meaning. And I think it's not for nothing. May I finish with just one sentence? It's not for nothing that the very following clause, 3731D, uses an entirely different term cause of action. And I think it's consistent. You can say that is a legal theory, and up here these are different factual theories. And in any event, we thought it was a clear question, which is why I didn't trouble the court with it until I was asked about it. Thank you very much. Ms. Patterson, Department of Justice, we'll hear from you. Ms. Patterson, how about starting with your waiver claim about the failure to bring up this point about directly. You've got to show that the money was used directly for a specific purpose, and you're claiming that KBR didn't raise that sufficiently in district court. Yes, Your Honor. The KBR did raise it in opposition to the government's motion for partial summary judgment. It wasn't a cross motion. They weren't saying we win on this basis. They were only saying the government doesn't win on this basis for only a subset of claims that ultimately went to trial. So they did raise it then. And then six months later, when trial rolls around, they say nothing about it. They disagree with the district court's interpretation of the term kickback. But hadn't the district court ruled against that point in the summary judgment ruling? In the partial summary judgment ruling, she had not adopted that view, but she did not explicitly reject it. And let's note, this was not even for all of the claims that ultimately were going to trial.  where the government had raised something in a summary judgment motion. It was its own summary judgment motion, and then failed to re-raise it in the pretrial proceedings. And this court said, that's waived. You did not give the court below or the opposing party fair notice of the factual and legal bases on which you intend to litigate this case. So having said nothing about it after raising it in their opposition to partial summary judgment, the United States and the district court was not on fair notice that they intended to press this specific link. In the ruling on the partial summary judgment, did the district judge refer to this at all? Not directly. I think she made a glancing reference to it, but did not specifically say, I'm not taking them up on that, and here's why. But again, at the pretrial conference, I urged the court to look at the pages from the pretrial and post-trial filing from KBR that they point to. That's page 1872, pages 2884. They say, that's where we raised it. That's where we put the government and the court on notice that this was a factual and legal basis that we think we went on. And if you look at those pages, the only way they're citing Sundiamond, the only argument they're making, is that we have to show knowledge on both the part of the recipient and the giver. The district court took them up on that. She agreed with them. She said, yes, you do have to prove knowledge. She specifically said, in her district court opinion that's on appeal now, to the extent that what I'm saying now conflicts with what I said before, the prior order is overruled. So when they had said, we disagree with something Your Honor has said about the definition of a kickback, and we want to litigate the case on that basis, the district court engaged with it. We put on the factual showing that Bob Bennett and James Bennett knew that these things of value were given to them in order to improperly obtain favorable treatment. I'm going to call it the Sundiamond issue. Was the Sundiamond issue, was it part of the questioning at trial that KBR was examining people saying, what is the specific purpose of this $12.15 breakfast? I don't know, Your Honor. I don't have all the trial transcripts, but this certainly was not a legal. What do you mean you don't know? Your Honor, I'm unaware. Let me put it this way. I'm unaware of anything where they said, what is the specific link? And they certainly hadn't put us on notice that we needed, if we wanted to preserve liability on at least some of these claims, that we needed to provide a very specific act that each person had in mind when they gave and when they took these things of value. So again, even if there were some questions about it, and I'm not sure what, I'm unaware of any specific ones, we weren't on notice that they thought the reason they would win this case is because we hadn't shown a specific, a particular act, as opposed to improper favorable treatment, which is, of course, what the statute refers to. I'd like to turn to the proper interpretation of 8706, unless there are further questions about waiver. I think the primary argument KBR is making here is that our reading of the statute, by urging an apparent authority, knowledge, and putation standard, is that we don't give meaning to the word employees in A2. And I think the facts of this case, as they developed at trial, give the lie to that supposition. There were other lower-level KBR employees here, James Ramirez, Melissa Page, a woman named Anita, who were also the subject of EGLE's kickbacks. They were under Bob Bennett's supervision, and we did not even try to make out a case that they had the apparent authority to give Kate EGLE the favorable treatment that they were trying to get. I don't think this is irrational, Your Honor, though, in just a common-sense way about how kickbacks work. If you want your contract performance to be evaluated, not on the basis of your actual performance, but because people like you, you say, sure, let's take the whole office. I want to bring the people who are your friends and coworkers and take them to dinner and take them to golf. So even if those are not the decision-makers, because we could only make out a case for the decision-makers here, James and Bob Bennett, those are very much kickbacks that absolutely were being passed along, that were being paid by EGLE, inflating the price and corrupting the kickback process. So you put a lot in that final phrase. Let me back it up some. Are you saying that the Any Kickback Act, if you're at the right level in the company, the apparent authority, if that's the right way to look at it, whatever that level may be, that general business development kinds of expenditures that go on traditionally across the board, in law firms, in private businesses, that those are kickbacks? That taking somebody for business development purposes without any specific contract or subcontract in mind is prohibited if you're at the right level of KBR? I think that's a little overbroad, Your Honor. First, as a baseline, the idea that because something is ordinary course of business in the private sector, that absolutely does not make it okay. Congress has made clear that anything of value, if you're giving, and here's where I think the hypothetical got a little overbroad, Your Honor. In order to improperly obtain favorable treatment on a subcontract. So here the district court- What does improper mean? It seems to me as improper means if it's as a result of you currying favor, of making friends. Is that what improper means? I'm not asking really for a definition so much there is. But KBR is arguing, or has argued, maybe not from the podium today, is there's no way for an employee at the right level of KBR to know what to do and what not to do in the normal way of working with your subcontractors. I don't think there's no way. They had a specific policy for their government contracts group that you couldn't take anything. Even the nominal things of value that you were allowed to take- Well, but I'm asking you not KBR's policy. I'm asking you where is the statutory line. And I think, are you saying the line is you can take nothing? That you cannot be entertained? Your Honor, the word improperly does some work here, and you were asking about an intermediate standard. The district court gave real meaning to the word improperly by saying the government has to show that these were not incidental or innocent favors. That is our standard of proof, and we met it here. That was at KBR's urging, and that phrase is drawn directly from the legislative history. So if the government can't show these weren't innocent, these weren't designed to improperly influence the subcontracting process, the evaluation, and the award, if we can't make that showing, we don't get liability. So the word improperly does real work. The district court gave it real content at KBR's urging, and we met the standard that was set out there. But returning to the work that the word employees does, we chose not to pursue an A2 theory in this case. We were proceeding solely under A1, and so we could only go after kickbacks where we could establish that the recipient had apparent authority. The district court found, and that finding is unchallenged on appeal, that James and Robert Bennett did have the requisite apparent authority. Well, didn't she use the standard that Judge Jolly recommended in his concurring opinion? She did. So it's not apparent authority. Your Honor, that was specifically for knowledge. We do think the district court did more than it had to. Again, we were urging that apparent authority for both the acts and the mental state while committing those acts is the appropriate standard. But even if there's some sort of standalone, separate knowledge imputation that doesn't use the usual rule of apparent authority, that standard was amply satisfied here. The district court expressly adopted Judge Jolly's concurrence and applied it. The pitch on appeal was that the district court was obliged to run through the eight-factor In Re Hellenic test from the limited liability context and that the district court committed legal error by not running through all eight of those factors. But the district court did what Judge Jolly set out in his concurrence. And so whether you think that apparent authority is the appropriate standard or whether you think it's a separate knowledge imputation standard under Judge Jolly's concurrence, we've met that standard here and this court should affirm either way. The only way I think that KBR gets a reversal here is if you find legal error that the district court did not apply those eight specific factors from In Re Hellenic. So there's no cross appeal on your part? There's not, Your Honor, but, of course, appellees can urge affirmance on any ground fairly presented in the record. We very specifically preserved this question at Record on Appeal 2191 to say we understand the district court is going to adopt Judge Jolly's regime for knowledge imputation, but we think apparent authority is the right way to go. And if I could just say a few words about... Well, wait a minute. When did you say you did this in the Vince trial? Yes, Your Honor. How did you know the judge was going to use... We call it the Jolly standard. How did you know the judge was going to use that? In her order on the partial summary judgment motion, she ran through the various options, the kind of three different fact tests that were being put forward, and she said, I think Judge Jolly got it right. All right. And so we knew, and we had a chance to make that showing at trial, which we did, and that finding is unchallenged on appeal. But we preserved our alternate argument. Let me ask you, with respect to my colleague next to me here, and it seems to me one problem with the Judge Jolly standard is it is not tied sufficiently to what you are looking for. That's one thing about the Lennox factors. They would tie it more specifically to what you're looking for. What the standard says is that you're looking for knowing violations by employees whose authority, responsibility, managerial role is such that their knowledge is imputable to the corporation. How do you know whether they're—how would you tell a fact finder whether the managerial role is sufficient in a company like KBR to impute it to the corporation? Do you see, if we're going to use that standard, that perhaps something more is needed to make it specific enough for a fact finder to apply? I don't think so, Your Honor. Judge Jolly's concurrence drew on various common law principles that are relevant to when you're imputing knowledge of a stand-alone fact. And while they certainly are going to be fact-intensive, and all of the cases about this talk about how you have to look at the particular circumstances of the case, I think courts are able to use as a touchstone, is it fair, given what the corporation did vis-à-vis this employee, the kind of responsibilities, the kind of authority that they had, is it fair to the corporation to impute that employee's knowledge? If I could say just a few words about why we think that that view of knowledge imputation, that the cases, that the restatement, that the sections of Fletcher that are about knowledge as a stand-alone fact is not the right way to look at this, why we think apparent authority is the right way. And I would direct this Court to the Hyder-Level decision, and there they specifically cited with approval a number of cases that involved imputing torts that require a specific knowledge, that require a state of mind. So they pointed to the Krebs case that imputed, again, just using the same apparent authority, knowing participations in a securities fraud scheme. Just any participation, unknowing participation, wouldn't have violated the Securities Act. But knowing participation did. And the Supreme Court didn't suggest that you don't take the knowledge that you've engaged up separate and apart from the knowing engagement in the conduct. Similarly with common-law fraud, in common-law fraud you have to have a certain scienter. But nowhere in the rules of vicarious liability do we walk through the elements of common-law fraud and say, well, the misrepresentation, the act of misrepresenting something to an innocent third party, that's imputed, that act is. But the requisite scienter that you knew that you were deceiving them, that goes up under a separate standard. So that's why we think that apparent authority is the right way to look at imputing to a corporation both knowledge and mental states. But I do want to emphasize that the district court did faithfully apply the test from Judge Jolly's concurrence, and there's no reason to reverse on that basis. I want to move to some of the other issues, even one that may be waived. What do you say to the argument, just heard or otherwise, to whether this must be tied to some more specific conduct on the part of the kickbacker? I think none of the three rationales that the Supreme Court set out in Sundiamond about the particular statute, Section 201, apply here. First, the text of the statute has actually moved away from a specific act requirement. Before the 1986 amendments, you would have had to show in the specific act, you would have had to show the actual award of a subcontract or an order, and Congress deliberately changed that to the much more generalized phrase, trying to obtain improper favorable treatment. And there is no separate specific definition of improper favorable treatment in the act the way there is in Section 201. Well, let's back up before you leave that. You're talking about how the statute changed, and this may fit more under one of your other examples. But it seems to me favorable treatment is a very dangerous word for a criminal statute as well as a civil statute. And we talked already about business development and business relations and what corporations and subcontractors do. It seems to me the line between maintaining good relations on the eve of a new subcontract maybe being issued, the line between what is proper and improper is invisible. I mean, how do you apply this statute, this standard statute, in the real world? Your Honor, I think Congress is allowed to say that you can't take anything of value to improperly obtain favor. Well, that's the improper part. And what is improper is, in any particular situation, it almost seems to me it's very difficult to discern. Well, again, Your Honor, the government has the burden to show. We have to prove that this wasn't incidental or innocent. And we met that standard here. This seems circular. It's either improper or it's innocent, and that's all part of the definition of where is the line. So it doesn't help us any to say it's innocent versus improper. Your Honor, the Supreme Court didn't impose the specific act requirement in Sundiamond just on some sort of generalized concern about policing the line. They imposed that because of a specific statutory problem, and we don't have that statutory problem here. Moreover, the snares for the unwary that the court was troubled by there was not some sort of sense that, well, low-level kickbacks or low-level gifts are okay, but once you get to maybe $1,000, it's not okay to be giving those to the people evaluating your performance. Does the bribe have to be in exchange for an official act? Not under the Anti-Kickback Act, Your Honor. It has to only be given with the intent to improperly obtain favorable treatment on a subcontract. But, again, the snares for the unwary were that in the gift-giving context to government officials, there are statutes that the Supreme Court pointed to that say, under a certain dollar value or for specific purposes, it's okay to get gifts. And the Supreme Court said we think the government's theory in Sundiamond would mean that you might be held criminally liable under 201 for conduct that was specifically okayed in a separate statute. But there are no statutes that say it's okay to take low-level things from your subcontractors in order to develop goodwill, let alone the $200 dinner after $400 dinner after $350 round of golf after $200 lunch that we have here. So this case, I think, I understand your concern about the standard generally. I don't think any of the factors that were applicable in Sundiamond apply here. But I think this case does not represent any form of government overreach. As the district court found, there was a prolonged course of frequent gift-giving by EGL to these KBR employees. How about statute of limitations? Yes, Your Honor. I think it's helpful just to turn to the text of 3731, which makes it clear that the government can come in and file an entirely new complaint and add any claims, and then any such pleading relates back in its entirety. And I think that that language Well, to add detail to the claims to which the government is intervening. I beg your pardon, Your Honor? They can do so, quote, to the claims in which the government is intervening, even though the government can file a new complaint. But it's to add detail to the claims in which the government is intervening, and the claims the government was intervening was a false claims act. Your Honor, but that is not the only thing that the government can do. The add detail does not control. That's not the limit on what the government can do. It says that it can, to clarify or add detail, but preceding that is the or clause. It may file its own complaint. And as the district court pointed out, the idea that claims is limited No, it says it may file its own complaint to clarify or add detail to the claims in which the government is intervening and to add any additional claims with respect to which the government contends it is entitled to relieve. Your Honor, I think under the last antecedent rule, that applies if we're choosing to amend the complaint as opposed to swooping in with an entirely new complaint. I don't read it that way. But, Your Honor, just as a pragmatic matter, the only claims that a relator can bring are under the false claims act. Of course, conduct that gives rise to false claims act liability is often going to properly be the subject of many other statutory violations, criminal ones like the ones happened here, anti-kickback act liability as well as false claims act. If we apply the statute of limitations here, how much of the claims of the government would that bar? I believe their argument is that our complaint and intervention was barred in its entirety because as of 2010, it was untimely. I want to point out that the reason... I thought on the other hand, you didn't have notice because the complaint was not public. It was not, Your Honor, because we had a... And consequently, the statute didn't start running until it became public. Two things, Your Honor. The Congress specifically acted to overturn a Second Circuit's ruling that said we think the notice underpinnings of Rule 15, we think the kind of judicial gloss that it has to give fair notice, that's the wrong way to think about this. And in this statutory context, we want the government to be treated as if it had filed that relator's complaint way back in 2004. Second, in order to keep something under seal, which would deprive them of notice, the United States has to go to a court every 60 days and establish that there is good cause for this remaining under seal. And the United States satisfied that burden, so it's not just that we get to sit on these complaints for years on our own say-so. We have to go to a court and establish that there were good reasons for keeping this under wraps, and we satisfied that here. I see I'm out of time, Your Honor. Okay, thank you very much, Ms. Patterson. Mr. Elwood, you've saved some time for rebuttal. Thank you, Your Honor. I'd like to say at the outset that the government hasn't come up with any limiting principle for the two problems we identified at the outset. That is, they haven't given any meaning to the word employee in the strict liability provision. They said all they could point to was, again, employees without an apparent authority, and they haven't given any limiting principle to the word improper with respect to the Sundiamond problem. So we are at the end of, you know, 22 minutes of very persuasive argument in the same position we were at the outset of our brief. The government hasn't identified any limiting principle there. The limiting principle, it seems to me, that's being argued throughout Ms. Patterson today, capping it off, is that gifts are not allowed. And innocent and incidental ain't much, but that at least, and I'm not saying it's a particularly clear standard to apply, but at least it's saying that your employees, your clients' employees, can't take gifts of almost, certainly not the level of golf trips and overnight stays and whatever, $12 lunch. If you want to gamble, go ahead. But I think, you know, that is at least a clear standard. I don't think it's the standard that Congress intended, because even if you don't put a lot of truck in legislative history, the legislative history was fairly clear that they didn't intend to close off business entertainment, ordinary business and entertainment, they say of a de minimis nature. Why do you say that? I can provide that. Well, that's fine. Are you just saying it's explicitly said in the legislative history? Yes, it's explicitly said in both the Senate and the House reports on the legislation. And this court, in addition, has, and I can actually provide a cite for that, this court in addition has said that it didn't mean to address ordinary business practices in Morris Diesel versus, oh, it's not this court, it's the federal claims, it's the Court of Federal Claims, but Morris Diesel versus United States, 66 Fed claims, 788 at 800. And the cite is practices that are normal in business settings, the Senate report at 11 on that. But it is not the standard that Congress meant to give, and they put the word, I think, improper in there for a reason. And I think the best meaning you can give to it is the meaning that they essentially gave in Sundiamond, which is the idea is that general efforts to obtain goodwill are not wrongful. The government said that this was addressed, that the 86th legislation, I'm sorry, that Sundiamond was to address specific statutory problem. But I don't think that there's any meaningful distinction between the statute here and the statute in Sundiamond. If you look at just the predicate, the predicate there was for or because of, and this is to improperly obtain or reward. Obtain or reward are pretty much like the for or because of. And the word improper, the fact that that's in there suggests that, if anything, as I say, it's more reason to report Sundiamond because that identified that general efforts at goodwill are not wrongful. One important statutory history point that was made in the brief and restated today is that the Kickback Act was amended in 1986 to remove the phrase that it had to be an inducement for a subcontractor order. What about that? It does seem to me Congress has given some signal by removing what would have been a little clearer standard, and we're now back to the fuzziness that we have. Well, I think the, I mean, there's, I'll try, I'll start over again. I think that the legislative history is to borrow a phrase from Sundiamond, pregnant with the idea that it has to be a particular act. Because if you look at it, they may have said not an inducement, but they did say, they did identify particularity in the acts. They had a list, both of the reports had a list of 11 different examples of particular acts, and all of those are, you know, way more specificity than what we have here. Things like, quote, being allowed to bid after a deadline has passed, obtaining normally unavailable information about a competitor's bid, and properly obtaining a reward. All of those are very specific particular acts. They're not talking about, you know, we hope that we'll get better treatment in the future or we hope that we'll get a subcontract some day. It's about specific acts. And with my remaining time, I wanted to just point out one thing about the preservation issue. This court has said there's no bright line rule. She admits, the government admits that we raised it in our motion for summary judgment. The case, they point to- Well, what was it, and also, was it developed during trial with question and answer? By that point, we thought we had lost. Because, remember, we raised this in the summary judgment motion, and she said, I find that there's no issue of material fact with respect to whether these were kickbacks. So at that point, we thought we'd already lost the issue. And our pretrial and post-trial motions were all based on this idea that we thought we'd already lost this issue, which, as she says, we presented. So a witness was never questioned about, did this have a specific purpose, a specific illegal purpose or anything like that. There was no development of that during the bench trial. No. But I would like to, I mean, not that I know of. But two points about that. First, the government has had plenty of opportunity to raise it in our brief. They haven't pointed to, they've made generic descriptions of prejudice, but they haven't pointed to any evidence that they would have brought in, even though these are all their witnesses. And then secondly, the Simon case that they cite for the idea that a summary judgment motion is insufficient, there it specifically said the government did that without claiming the statute applied to the case. It's at the bottom of page 21, footnote 6 of their brief. And I think that's distinguishable from here, because the court has said there's no bright-line rule. And we gave the court an opportunity to rule on the issue we thought she had. So with no further questions. Thank you, Mr. Erwin.